UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JESSICA BATTISTE, *et al.*                    CIVIL ACTION 1:17-CV-00740

VERSUS

CLERK OF COURT, OFFICE OF          MAGISTRATE JUDGE PEREZ-MONTES
AVOYELLES PARISH

---

MEMORANDUM RULING

Defendant Connie Couvillon ("Couvillon"), the Avoyelles Parish Clerk of Court

("Avoyelles Parish CoC"), filed a Motion for Summary Judgment (Doc. 60). Because

Batiste has not provided valid comparators to demonstrate disparate pay, she has not

asserted a *prima facie* case of racial discrimination under Title VII if the Civil Rights

Act of 1964. Couvillon's Motion for Summary Judgment should therefore be granted.

I.      Background

Plaintiffs Jessica Battiste and Rose Batiste filed a Title VII complaint against

the Avoyelles Parish CoC.[1] Plaintiffs seek back pay due to unjust wages, fair

adjustment of current wages, attorney's fees, and equitable relief (Doc. 1). Plaintiffs

showed exhaustion of their claims through the Equal Employment Opportunity

Commission ("EEOC"). Jessica Battiste's complaint was dismissed for failure to pay

the filing fee (Docs. 13, 15). Rose Batiste ("Batiste") is the sole remaining Plaintiff.

---

[1] This action was initially filed in the United States District Court for the Middle District of Louisiana, and was transferred to the Western District (Doc. 28).

Couvillon answered the complaint (Doc. 20), and filed a Motion for Summary Judgment (Docs. 60, 64-66). Batiste responded to the Motion (Docs. 69, 72-73), and Couvillon replied (Doc. 74).

## II.   Law and Analysis

### A.   Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[2]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" See Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a

---

[2] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

mere scintilla of evidence is insufficient to defeat a motion for summary judgment.

See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

B.    **Batiste has not asserted a hostile work environment or racial harassment claim.**

First, Couvillon argues that Batiste failed to exhaust her administrative remedies concerning her claim of racial harassment, or a hostile work environment. Couvillon also contends Batiste cannot prove she was subjected to a hostile work environment.

Batiste concedes that she is not claiming a hostile work environment, and specifically withdraws that claim to the extent it was made (Doc. 69). The EEOC did not review a hostile work environment claim, and such a claim is not stated in the complaint.

Therefore, Couvillon's motion for summary judgment on the claim of a hostile work environment is denied as moot.

C.    **Batiste has not provided direct evidence of racial discrimination on summary judgment.**

Title 42 U.S.C. § 2000e-2 states:

It shall be an unlawful employment practice for an employer--
    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

A Title VII plaintiff may state a prima-facie case of discrimination using either direct or circumstantial evidence. See Herster v. Board of Supervisors of Louisiana State Univ., 887 F.3d 177, 184 (5th Cir. 2018) (citing Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C., 778 F.3d 473, 475 (5th Cir. 2015)). Direct evidence is "evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." Cross v. FPP Operating Partners, L.P., 2001 WL 1143159, at *5 (N.D. Tex. 2001) (citing Brown v. East Mississippi Electric Power Association, 989 F.2d 858 (5th Cir. 1993). In the context of Title VII, direct evidence of discrimination includes any statement or written document showing a discriminatory motive on its face. A statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination.[3] See Herster, 887 F.3d at 184. An oral statement exhibiting discriminatory animus may be used to demonstrate pretext, or it may be used as evidence of discrimination. See Sharkey v. Dixie Elec. Membership Corp., 262 Fed. Appx. 598, 605 (5th Cir. 2008) (citing Laxton v. Gap Inc., 333 F.3d 72, 583 (5th Cir. 2003)).

To determine whether comments in the workplace constitute direct evidence, or only "stray remarks," the United States Fifth Circuit Court of Appeals has looked to four factors: (1) whether the comments were related to the plaintiff's protected

---

[3] If the plaintiff presents direct evidence of discrimination, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor. See Arceneaux v. Assumption Par. Sch. Bd., 2018 WL 2271077, *2 (5th Cir. 2018) (citing Etienne, 778 F.3d at 475).

characteristic; (2) whether the comments were proximate in time to the challenged employment decision; (3) whether the comments were made by an individual with authority over the challenged employment decision; and (4) whether the comments were related to the challenged employment decision. See Etienne, 778 F.3d at 476 (citing Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222 (5th Cir. 2001)). In applying this test, the ultimate focus is on whether the comments prove, without inference or presumption, that race was a basis in employment decisions in the plaintiff's workplace. See Etienne, 778 F.3d at 476 (citing Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 993 (5th Cir. 2005)). Notably, when the proximity in time of the comments to the challenged employment decision is unclear, we have found the proximity-in-time factor to be satisfied when the comments were routine, or made over a lengthy period of time. See Etienne, 778 F.3d at 476.

As evidence of Couvillon's intent to discriminate against Batiste on the basis of her race, Batiste testified in her deposition about statements made to her by Dodi Lachney, a former Avoyelles Parish CoC employee who was terminated from her employment there in about December 2015. Batiste explained that Couvillon made racist statements about Batiste and Jessica Battiste to Dodie Lachney (who is Caucasian) (Doc. 69, Doc. 60-3, p. 58/91). Lachney told Battiste about Couvillon's statements (Doc. 69, Doc. 60-3, p. 58/91). Lachney told Batiste that: (1) Couvillon had referred to Batiste and Jessica Battiste as "the N word"; (2) Couvillon said that she hoped they would jump out of the window; (3) Couvillon ordered other employees (Melissa Daigrepont and Jackie Boilier) to watch them; and (4) Couvillon said she

5

"needed to come up with something to get rid of the niggers" (Doc. 69, Doc. 60-3, pp. 56-58/91).

Batiste's recounting of Lachney's testimony is plainly hearsay evidence. See F.R.E. rule 801(c). This Court cannot consider hearsay evidence in an affidavit or deposition as summary judgment evidence. See <u>Samberg v. Progessive Paloverde Ins. Co.</u>, 2018 WL 627302, *6 (W.D. La. 2018) (citing <u>Bellard v. Gautreaux</u>, 675 F.3d 454, 462 (5th Cir. 2012); <u>Horton v. Entergy Services, Inc.</u>, 2012 WL 1098470, *9 (S.D. Miss. 2012) (citing <u>Snapt, Inc. v. Ellipse Communications, Inc.</u>, 430 Fed. Appx. 346, 352 (5th Cir. 2011)). Batiste did not produce any affidavits or deposition testimony from witnesses to Couvillon's alleged statements. Thus, Batiste has not pointed to any non-hearsay statements or documents that show Couvillon's alleged discriminatory animus. There is no competent direct evidence of discrimination before the Court.

### D. <u>Batiste has not asserted a prima facie case of racial discrimination.</u>

Couvillon contends Batiste has not established a *prima facie* case of racial discrimination in compensation because: (1) Batiste has not provided valid comparators; (2) Batiste cannot show she made less than her purported comparators; and (3) there was a legitimate, non-discriminatory reason for any pay disparity.

Understanding the difficulty in obtaining direct evidence of an individual's mindset in Title VII claims, the Supreme Court established a framework to prove intentional discrimination through the use of circumstantial evidence. See <u>Arceneaux v. Assumption Parish School Board</u>, __F.3d__, 2018 WL 2271077, at *2 (5th Cir. 2018) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 803 (1973)).

6

Under the <u>McDonnell Douglas</u> framework for discrimination cases: (1) the plaintiff must first establish a prima facie case of discrimination, and if she does, (2) the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action, and if it does, (3) the plaintiff must offer evidence that the proffered reason is a pretext for discrimination.  <u>See</u> <u>Johnson v. TCB Const. Co., Inc.</u>, 334 Fed. Appx. 666, 669–70 (5th Cir. 2009) (citing <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-04).  To establish a *prima facie* case of racial discrimination with respect to compensation, the plaintiff must show that she was paid less than a proffered comparator, not in the same protected class, for work requiring substantially the same responsibility. [4]  <u>See</u> <u>Herster</u>, 887 F.3d at 184–85 (citing <u>Taylor v. United Parcel Serv., Inc.</u>, 554 F.3d 510, 522–23 (5th Cir. 2008); <u>see also</u> <u>Mitchell v. Mills</u>, 895 F.3d 365, 370 (5th Cir. 2018) (citing <u>Taylor</u>, 554 F.3d at 522).  More particularly, the plaintiff must show that those workers to whom she compares herself were performing substantially the same job that she was.  <u>See</u> <u>Johnson</u>, 334 Fed. Appx. at 670.

An individual plaintiff claiming disparate treatment in pay must show that her circumstances are "nearly identical" to those of a better-paid employee who is not a member of the protected class.  <u>Mitchell</u>, 895 F.3d at 370-71 (citing <u>Taylor</u>, 554 F.3d at 523).  The proffered comparator must be similarly situated to the plaintiff.  <u>See</u> <u>Herster</u>, 887 F.3d at 184–85 (citing <u>Lee v. Kansas City Southern Ry. Co.</u>, 574 F.3d

---

[4] Once shown, a plaintiff's prima facie case creates an inference of discrimination, which the employer is required to rebut with a legitimate non-discriminatory reason for the pay disparity.  <u>See</u> <u>Taylor v. United Parcel Serv., Inc.</u>, 554 F.3d 510, 522 (5th Cir. 2008) (citing <u>Ross v. University of Texas at San Antonio,</u> 139 F.3d 521, 525 (5th Cir. 1998)).    That issue is not reached in this case.

253, 259–61 (5th Cir. 2009)).  The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable violation histories.  See Lee, 574 F.3d at 260.

Nearly identical is not synonymous with identical, however.  See Lee, 574 F.3d at 260.  A requirement of complete or total identity rather than near identity would be essentially insurmountable.  See Hoffman v. Baylor Health Care Sys., 597 Fed. Appx. 231, 236 (5th Cir. 2015), cert. den., 136 S. Ct. 45 (U.S. 2015) (citing Lee, 574 F.3d at 260).

In practical effect, the "nearly identical" standard renders employees not similarly situated when, compared to the plaintiff, the employees have different work responsibilities, different supervisors, work in different company divisions, or were subject to adverse employment actions too removed in time or for violations too dissimilar in type.  See Hoffman, 597 Fed. Appx. at 235–36.  By properly showing a significant difference in job responsibilities, the defendant can negate one of the crucial elements in a plaintiff's *prima facie* case of discrimination.  See Mitchell, 895 F.3d at 371 (citing Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. Unit A 1981)).

1. <u>Wages paid by Couvillon to Batiste, Daigrepont, and Chenevert in 2015 and 2016.</u>

Couvillon contends in her affidavit that she paid Batiste a salary of $2,900 per month in 2015 and the first half (until she retired) of 2016 (Doc. 66, pp. 2-3/25). That is an annual (gross) salary of $34,800.

Couvillon contends she hired Daigrepont on about January 1, 2015 and paid her $3,000 per month for her first six months of employment, then reduced her pay to $2,500 per month (Doc. 66). Daigrepont claim she paid Daigrepont $33,000 in 2015 (Doc. 66, pp. 4-5/25). Couvillon further contends she paid Daigrepont $31,500 in 2016 (Doc. 66, p. 5/25), although a gross salary of $2,500 per month is $30,000 per year.

Couvillon contends she paid Chenevert $3,275 per month in 2015 and 2016, for gross totals of $33,000 in 2015 and $34,740 in 2016 (Doc. 66, p. 6/25). However, a salary of $3,275 per month adds up to gross salary of $39,300 per year.

Although Couvillon's math is inexplicable, it appears that Batiste made a salary comparable to Daigrepont, who was a new hire in 2015, and made a great deal less than Chenevert in 2015 and 2016.

2. <u>Insurance benefits did not serve to raise Batiste's pay level above that of her purported comparators.</u>

Couvillon contends Batiste's pay was higher than she alleges because she was provided health care benefits, which Chenevert and Daigrepont had both (according to Couvillon's argument) rejected. Batiste contends when she was hired in 2002, she was offered a fixed salary before she elected whether or not to accept health care benefits (Doc. 73, p. 1/10). Batiste was hired by Couvillon's predecessor, and not by

9

Couvillon herself. Batiste points out that the same health care benefits are offered to every employee (Doc. 73, p. 1/10).

Couvillon testified in her deposition that Batiste's insurance benefits were "100% paid" by the Avoyelles Parish CoC (Doc. 60-4, p. 20/40) as part of her "salary and benefit package" (Doc. 60-4, p. 21/40). Couvillon also stated that salaries do not depend on the health insurance package (Doc. 60-4, p. 21/40), but later stated she "looks at" whether an employee accepts full insurance coverage in "looking at" their salary (Doc. 60-4, p. 30/40). Couvillon stated in her affidavit: "I considered the amount of monthly insurance premium benefits I was paying on behalf of Ms. Batiste and her husband when considering the salary to pay her" (Doc. 66, p. 4/25). Since Couvillon did not hire Batiste or set her pay (as explained in her deposition), this statement appears to be patently false.

If the same health care benefits may be elected by all Avoyelles Parish CoC employees when they are hired, and presumably during any open season (or life-change event) afterward, health insurance benefits do not affect employee compensation for comparison purposes. Moreover, since Couvillon did not hire Batiste, and did not set her salary, she obviously did not give any consideration to Batiste's benefits with regard to setting her pay.

Finally, in stating that she considers the benefits an employee elects when she sets their salary, Couvillon is stating, by extension, that an employee is paid more in wages if she receives less in benefits. Thus, Couvillon is negating her own repeated assertion that her employees' benefits are "100% paid by the Clerk's office." By

10

arguing Batiste would have a larger paycheck if she had elected to receive less in benefits, Couvillon is essentially stating that Batiste is paying for her own benefits.

Therefore, Couvillon's argument–that the amount of Batiste's health benefits are why she was paid less than her Caucasian co-workers–is misplaced at best and counterproductive at worst. The Court finds this argument entirely unpersuasive.

### 3. Daigrepont is not a valid comparator for Batiste.

Batiste contends that a new hire, Melissa Daigrepont, was given the same salary as Batiste. Batiste points out that she was senior to Daigrepont and supervised Daigrepont's leave.

The parties are arguing about Batiste's basic salary from the Avoyelles Parish CoC. Batiste acknowledges she made additional money from transcripts and received supplemental pay from the Twelfth Judicial District Court and the Avoyelles Parish Police Jury (Doc. 74, pp. 8-9/17). The minute clerks apparently also received supplemental pay from the Police Jury (Doc. 66, p. 14/25). Couvillon testified that Chenevert also made extra money on transcripts (Doc. 60-4, p. 17/40).

Batiste is African American (Doc. 69). Batiste contends she worked for the Avoyelles Parish CoC for 28 years and was responsible for supervising the CoC employees in the judge's office (the "third floor employees") (Doc. 69; Doc. 60-3, p. 10/91). Batiste was hired in 2002 as an office administrator by then CoC Sammy Couvillon (Doc. 60-3, p. 10/91). In 2004, Batiste was appointed the Official Court Reporter (Doc. 60-3, p. 13/91). When Connie Couvillon was elected Clerk of Court in

11

2012 (Doc. 60-4, p. 19/40), Batiste retained her positions as Official Court Reporter and office administrator.

Couvillon contends that Batiste's title was "Official Court Reporter/Office Administrator," and her job duties included transcribing, assigning transcripts requested by parties or attorneys, handling requests needing action from the Court of Appeals, preparing end-of-the month reports for the Supreme Court and the Sheriff's office, and transcribing transcript requests from incarcerated defendants. Couvillon testified that, as an officer administrator, Batiste supervised the five other third floor employees, approved their leave, and reported their absences to Couvillon (Doc. 60-3, pp. 30-32/91; Doc. 60-4, p. 15/40). If there was a problem with one of the third floor employees, Batiste would report it to Couvillon (Doc. 60-3, pp. 11, 72/91; Doc. 60-4, p. 31/40). Batiste also assisted with training new employees (Doc. 60-3, pp. 11, 72/91; Doc. 60-4, p. 17-18/40), and occasionally filled in as a minute clerk in court (Doc. 60-4, p. 36/40).

Batiste also contends in her affidavit that she was responsible for monitoring the quality of their work (Doc. 72, p. 2/53). However, Batiste did not have the authority to hire, fire, or issue corrective actions against the other clerk's office employees (Doc. 64, p. 7/17). Batiste reported directly to Couvillon (Doc. 64, p. 7/17). Couvillon testified that Batiste's salary was for her work as the official court reporter and an office administrator (Doc. 60-4, p. 15/40).

Two Caucasian employees supervised by Batiste were Chenevert and Daigrepont. Both were hired after Batiste–Chenevert in June 2002 and Daigrepont in 2015 (Doc. 72, p. 2/53).

Couvillon contends that Melissa Daigrepont and Sharon Chenevert each have the title "Civil Minute Clerk," and there are four minute clerks in all. Daigrepont is assigned to Judge Spruill and Chenevert is assigned to Judge Bennett (Doc. 64, p. 11/17). Couvillon contends the judges supervise their minute clerks. Couvillon alleges a minute clerk's duties include going into court with the judge to whom she is assigned, taking down minutes of the proceedings, processing paperwork, inputting minute entries into the computer system, file stamping pleadings, and sending out copies of pleadings to attorneys. A minute clerk also records court proceedings. Daigrepont and Chenevert reported to their judges and Couvillon, but informed Batiste when they wanted to take time off (Doc. 64, p. 11/17).

Couvillon testified that she employs as minute clerks the people selected by the judges for whom they will work (Doc. 60-4, pp. 7-8/40). Couvillon testified that Daigrepont was hired as a minute clerk at a salary of $3000 per month because Judge Spruill wanted to hire her and wanted her to be paid that much, but that the other minute clerks were not making that much (Doc. 60-4, p. 23/40). Nor was Batiste (Doc. 69-3, p. 68/91). Couvillon agreed to pay Daigrepont the same thing Judge Spruill had been paying her at his law office for the first six months (Doc. 60-4, p. 24/40). After

six months, Couvillon paid Daigrepont $500 per month less, and the Avoyelles Parish Police Jury began paying her a $500 per month supplement[5] (Doc. 66, p. 14/25).

Batiste contends Daigrepont made almost the same exact amount that she did in 2015, despite the fact that Daigrepont was a new hire. Batiste testified that Judge Spruill, who was a new judge in 2015, wanted Melissa Daigrepont to be hired by Couvillon as his minute clerk (Doc. 69, Doc. 60-3, p. 68/91). Judge Spruill brought Daigrepont from his private law practice. Judge Spruill told Batiste that he had insisted Couvillon pay Daigrepont a certain amount (Doc. 69, Doc. 60-3, p. 68/91).

Both Batiste and Daigrepont were hired by Couvillon, and Couvillon had the authority to fire them. Batiste worked for and was supervised by Couvillon. Batiste's pay was set by the Clerk of Court who employed her.[6] Daigrepont worked with and was supervised by Judge Spruill as well as Couvillon, and her leave record was kept by Batiste.[7]

Batiste differs from her comparator, Daigrepont, because they had different jobs and different supervisors. Daigrepont's initial pay was higher than that of others employed by Couvillon because Judge Spruill, her actual supervisor, asked that she be paid a salary commensurate with her pay her at his law firm. To accommodate

---

[5] The Police Jury had a six month probationary period before they paid the salary supplement (Doc. 66, p. 14/25).

[6] Batiste contends that, even if Judge Spruill was directly responsible for Melissa Daigrepont's employment and wage, there was favoritism in favor of Caucasians. However, the alleged favoritism, even if proven, would be attributable to Judge Spruill, rather than Couvillon.

[7] Couvillon had the right to hire and fire her court employees, including Daigrepont, although she apparently hired at the judges' request.

Judge Spruill's wishes, Couvillon paid Daigrepont extra for the first six months until the Police Jury began its supplemental pay. It appears only Daigrepont received preferential treatment in pay, because Judge Spruill requested it and Couvillon acceded to his request. Although Couvillon contends it was customary for the Avoyelles Parish CoC to employ the minute clerks the judges wanted to employ, Couvillon does not claim she had to agree to Judge Spruill's request that Daigrepont receive higher pay, or that such requests were customarily made.

Ordinarily, the differences in supervision and job responsibilities alone would be sufficient to disqualify Daigrepont as a comparator for Batiste, since their jobs were not "nearly identical." However, in this instance, Judge Spruill's request that Daigrepont receive higher pay also indicates there was no intent by Couvillon to discriminate against Batiste (or any of her other employees). Rather, it appears that Couvillon intended only to accede to Judge Spruill's wishes.

Therefore, Daigrepont is not a valid comparator for Batiste.

### 4. Chenevert is not a valid comparator for Batiste.

Batiste contends Chenevert was paid more than she was, although Chenevert did not have Batiste's seniority and Batiste was a supervisor. Couvillon argues that Chenevert had different job responsibilities than Batiste.

Couvillon contends Batiste makes more income than Chenevert due to payments for completing transcripts. However, Batiste points out that Chenevert also has an equal opportunity to make extra income by completing transcripts.

15

Whether she chooses to do so is discretionary with Chenevert. Batiste contends her salary from Couvillon (before transcript work) was lower than Chenevert's.

Couvillon testified that Chenevert was Judge Bennett's minute clerk (Doc. 60-4, p. 8/40). Couvillon testified that Judge Bennett chose Chenevert, who was then hired by the previous Clerk of Court (Doc. 60-4, p. 8/40). Chenevert takes the minutes of Judge Bennett's court proceedings; processes paperwork for criminal pleadings that require the judge's signature; file-stamps the pleadings; enters the pleadings into the minutes; sends out copies to the attorneys; inputs minute entries into the computer database; and any additional duties Judge Bennett assigns to her (Doc. 60-4, pp. 9-10/40).

Batiste contends Chenevert was paid $300 more than she was in the second six months of 2012, $2100 more than Batiste in 2013, $3700 more than Batiste in 2014, and $2812 more than Batiste in 2015. Chenevert's pay increases appear to have begun after Couvillon became Clerk of Court in 2012.

Couvillon contends Batiste had different job responsibilities from the other clerks because she was the official court reporter and a supervisor, while they were minute clerks. Essentially, Couvillon contends Batiste had more responsibility than Chenevert or Daigrepont.

Chenevert worked directly with and was supervised by Judge Bennett, although she was employed by Couvillon[8] and her leave was supervised by Batiste.

---

[8] Couvillon had the authority to hire and fire Chenevert.

Because Chenevert had a different supervisor than Batiste and different job duties, they are not "nearly identical." Therefore, Chenevert is not a valid comparator.

### 5. Batiste had a unique job as Official Court Reporter.

Batiste's position as the Official Court Reporter was unique. There were no other official court reporters employed by the Avoyelles Parish CoC, although both Chenevert and Stephanie Johns (a former Avoyelles Parish CoC employee) did some transcription work (Doc. 60-4, p. 17/40).

In Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998),[9] the United States Court of Appeals for the Sixth Circuit stated that a *prima facie* standard that requires the plaintiff to demonstrate that he or she was similarly-situated in every aspect to an employee outside the protected class receiving more favorable treatment. This standard seemingly removes from the protective reach of the anti-discrimination statutes employees occupying "unique" positions, save in those rare cases where the plaintiff produces direct evidence of discrimination. If the non-protected employee to whom the plaintiff compares himself or herself must be identically situated to the plaintiff in every single aspect of their employment, a plaintiff whose job responsibilities are unique to his or her position will never successfully establish a prima facie case, absent direct evidence of discrimination. In

---

[9] In Ercegovich, the Court stated that differences in the job activities previously performed by transferred and non-transferred employees do not automatically constitute a meaningful distinction that explains the employer's differential treatment of the two employees. "Common sense suggests that when an employer harboring age-discriminatory animus eliminates several employees positions, its decision to transfer its younger workers to new positions while denying its older workers the same opportunity irrespective of past differences in their particular job functions may reflect proscribed age bias." See Ercegovich, 154 F.3d at 353.

such cases, the Sixth Circuit requires the plaintiff to demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects. See Ercegovich, 154 F.3d at 353.

The United States Court of Appeals for the Eleventh Circuit has also held that a comparator must be similarly situated in all *relevant* respects. The court reasoned that a comparator must be "nearly identical" to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer. See Sapp v. U.S. Attorney General, 676 Fed. Appx. 878 (11th Cir. 2017) (citing Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2014)).[10]

The United States Court of Appeals for the Fourth Circuit has held that, to establish a *prima facie* case of race discrimination with respect to compensation, a plaintiff must show that he was paid less than a member of a different race was paid for work requiring "substantially the same responsibility." See Gray v. Newlan, 917 F.2d 557 (4th Cir. 1990).

---

[10] The United States Court of Appeals for the Second Circuit has held that, to prove race discrimination in pay in an EEOC claim, the plaintiff must satisfy the "demanding standard" of the "equal work inquiry" that requires evidence that the jobs compared are substantially equal. See Martinez v. Davis Polk & Wardwell, L.L.P., 713 Fed. Appx. 53, 55 (2d Cir. 2017) (citing E.E.O.C. v. Port Authority of New York and New Jersey, 768 F,3d 247 (2d Cir. 2014) (applying the "equal work" standard to a gender discrimination EEOC wage claim). However, in Washington County v. Gunther, 452 U.S. 161, 189-90 (1981), the Supreme Court found that Congress intended to incorporate the substantive standards of the Equal Pay Act into Title VII, so gender-based EEOC wage discrimination claims are governed by the equal work standard of the Equal pay Act. Therefore, the Second Circuit appears to have incorrectly applied the "equal work" standard to an EEOC claim for race discrimination. See also Myers v. Crestone International, L.L.C., 121 Fed. Appx. 25, 29 (5th Cir. 2005) (the Fifth Circuit applied the "equal work" standard and found the plaintiff failed to produce evidence, and make a *prima facie* case, that Crestone paid an appropriate male counterpart higher compensation for equal work because she had "some unique responsibilities").

The United States Fifth Circuit Court of Appeals has not specifically adopted either the "relevant respects" or the "substantially the same responsibility" analyses in those terms. Instead, the Fifth Circuit looks to "similarly situated employees" who are treated less favorably under "nearly identical circumstances." See Morris v. Town of Independence, 827 F.3d 396, 402-03 (5th Cir. 2016). Thus, the Fifth Circuit's analysis appears to be most similar to the Eleventh Circuit's requirement of a "nearly identical" comparator.

The Fifth Circuit has not found comparators for claimants with unique jobs. In Morris, 827 F.3d at 402-03, the Fifth Circuit mentioned and distinguished Ercegovich, and found Morris had not shown the differences between her job and those of her proffered comparators were not relevant to the challenged employment action. The court expressly declined to express any opinion regarding the "relevant respects" test set forth in Ercegovich. See Morris, 827 F.3d at 402.

Batiste has failed to show the two white employees she alleges were better-paid than she were "nearly identical" to her. Daigrepont and Chenevert were supervised by the judges for whom they worked, as well as Couvillon and, to a limited extent, Batiste. Batiste, however, was supervised by Couvillon only. The judges' supervision is a critical and relevant distinction. Moreover, Daigrepont and Chenevert were minute clerks and had significantly different job responsibilities from Batiste, who was the Official Court Reporter and a court administrator. Therefore, neither Daigrepont nor Chenevert is a valid comparator under the standard applied in our circuit.

19

Finally, Batiste may reasonable argue she had more responsibilities, and more arduous job duties, than Daigrepont or Chenevert, but was paid less than either of them by Couvillon. However, since Daigrepont and Chenevert are not valid comparators, Batiste cannot make a *prima facie* case of race discrimination under Title VII. And although the Court can find no Fifth Circuit opinion addressing the issue specifically, other authority indicates that there is no per se unlawful wage disparity whenever a supervisor is paid less than her subordinates. See <u>Mulhall v. Advance Sec., Inc.</u>, 19 F.3d 586, 598-99 (11th Cir. 1994).

Therefore, Couvillon's Motion for Summary Judgment should be granted.

III.     <u>Conclusion</u>

Based on the foregoing, Couvillon's Motion for Summary Judgment (Doc. 60) will be GRANTED and Batiste's action will be DISMISSED WITH PREJUDICE.

THUS ORDERED AND SIGNED in Chambers at Alexandria, Louisiana on this _22nd_ day of August, 2018.

                    Joseph H.L. Perez-Montes
                    United States Magistrate Judge